COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Eldon J. WINKEL, Respondent.

No. 87–1000.

Supreme Court of Iowa.

Nov. 25, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

Eldon J. Winkel, Algona, pro se.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This matter is before the court for final disposition upon the recommendation of the

Grievance Commission that the respondent be reprimanded for conduct violating DR 2–106(A) and DR 6–101 of the Iowa Code of Professional Responsibility for Lawyers. In accordance with Iowa Court Rule 118.10, we have reviewed de novo the record made before the commission. We agree with the commission's finding of misconduct and we concur in its conclusion that reprimand is the appropriate sanction.

Respondent Eldon J. Winkel has been engaged in the general practice of law in Algona, Iowa, for twenty-eight years. During his career he has reportedly handled over 400 estates. This case concerns his probate of the Kenneth W. Marty Estate. His often-strained relationship with the estate's executor, brother of the deceased, led to a complaint filed by the Committee on Professional Ethics and Responsibility of the Iowa State Bar Association (committee) charging Winkel with neglect, delay, and unauthorized collection of fees.

The facts are essentially undisputed. We turn first to the evidence pertinent to neglect and delay and then discuss the alleged unauthorized prepayment of fees.

I. Winkel opened the Marty estate in January, 1980. He allowed the estate to remain open for seven years, closing it only after his hearing before the Grievance Commission. The record reveals numerous delinquency notices mailed to Winkel during the estate administration. On May 1, 1980, he received one for failure to file the probate inventory within the time allowed by statute. *See* Iowa Code §§ 633.32, 633.-361, 633.363 (1987). Over one month passed before Winkel filed the inventory and a preliminary tax report. On May 2, 1983, he received another delinquency notice for failure to close the estate within the three-year period mandated by statute. *See* Iowa Code §§ 633.32, 633.473. Another month passed before he filed a report with the court requesting a continuance, explaining that federal estate tax problems still needed resolution. Further continuance was granted in October 1984. The federal estate tax closing letter was ultimately filed in January 1985.

Having resolved the federal tax problems, Winkel then delayed five months before filing the state inheritance tax return amendments to conform to valuation and other changes in the federal return. In late June 1986, Winkel responded to yet another delinquency notice dated May 1, 1986. At that time he filed another report and proposed order to continue the estate pending resolution of state inheritance tax complications. Another year passed before the state inheritance tax clearance was filed in July 1986. On October 20, 1986, Winkel forwarded the state inheritance tax refund check to the executor. Winkel justified the four-month interval between receiving and forwarding this check by explaining that he conducted approximately eight hours of research at two different libraries to determine whether there were grounds for appealing the size of the refund.

Winkel attributed his failure to close the estate in late 1986 to the executor's failure to respond to a request for information in August 1986. The executor acknowledged his failure to respond, and provided the information Winkel needed at the Grievance Commission hearing on May 4, 1987. The probate records reveal, however, that in December 1986, Winkel advised the court that he and the executor were working on a final report which would be done shortly after the beginning of 1987. In fact, Winkel had made no effort to contact the executor or take action to close the estate between August 1986 and the hearing.

Despite Winkel's claims to the contrary, the record before us establishes by a convincing preponderance of the evidence that Winkel's delay and inattention to this probate matter caused the estate to remain open a minimum of two years beyond the time reasonably necessary to resolve the tax questions. We have repeatedly held that a lawyer's dilatoriness in the handling of a probate matter will be met by disciplinary sanction. *See Committee on Professional Ethics & Conduct v. Rosene*, 412 N.W.2d 634, 636–37 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Miller*, 412 N.W.2d 622, 624 (Iowa 1987);

*Committee on Professional Ethics & Conduct v. Paulos,* 410 N.W.2d 260, 261 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Larsen,* 407 N.W.2d 601, 602 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Johnson,* 404 N.W.2d 184, 186 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Burrows,* 402 N.W.2d 749, 751 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Batschelet,* 402 N.W.2d 429, 431 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Megan,* 402 N.W.2d 432, 433 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Stienstra,* 395 N.W. 2d 638, 640 (Iowa 1986).

II.  More troublesome than Winkel's delay in concluding this estate is the fact that he accepted a full fee of $24,298 in March 1981, two years before the fees were approved by the court and more than six years before the estate was closed. While the amount of the fee is uncontested, the timing of its receipt furnishes the basis for other charges in this matter.

■ Attorneys are prohibited from receiving probate administration fees until after the amount is fixed by the court. Iowa Code §§ 633.197, 633.198; *see also Committee on Professional Ethics & Conduct v. Coddington,* 360 N.W.2d 823, 825 (Iowa 1985). Iowa Rule of Probate Procedure 2(d) provides that payment of one-half of the attorney fees may be authorized after the federal estate and Iowa inheritance tax returns have been filed, with the balance payable only upon court approval of the final report.

At the hearing before the commission, Winkel acknowledged his unfamiliarity with probate rule 2(d) requiring conclusion of the estate prior to final payment of attorney fees. He recalled having sought court approval before he received the fee in 1981, but could not produce documents corroborating that earlier authorization. He steadfastly maintained that when the fee was taken, he thought he had concluded ninety-five percent of the work necessary to close the estate. Moreover, he has not requested extraordinary fees despite his

assertion they would be justified under the circumstances.

We conclude, as did the commission, that Winkel's proferred excuses do not justify his unfamiliarity with the probate rules and unauthorized receipt of probate fees. *See Committee on Professional Ethics & Conduct v. Blomker,* 379 N.W.2d 19, 22 (Iowa 1985); *Coddington,* 360 N.W.2d at 825.

■ III.  In conclusion, we agree with the commission's finding that Winkel's conduct violated DR 6–101 (neglect of legal matter entrusted to him) and DR 2–106(A) (collection of illegal fee). We also concur with the commission's recommendation that Winkel's conduct deserves no more severe penalty than a reprimand. As we have noted, the estate has now been closed and there remain no duties yet to perform. The fees Winkel collected were appropriate in amount, if not properly authorized by the court when received. Winkel cooperated fully with the committee investigating the complaints against him, responding to the committee's request for admissions, and appearing for the commission hearing. Nevertheless, his departure from established rules of professional conduct warrants public attention. Accordingly, we hereby reprimand him.

It is further ordered that the costs of this action shall be assessed against the respondent in accordance with Iowa Supreme Court Rule 118.22.

ATTORNEY REPRIMANDED.