**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,**

v.

**William S. SMITH, Respondent.**

**No. 97–1016.**

Supreme Court of Iowa.

Oct. 22, 1997.

Charles L. Harrington and Norman Bastemeyer, Des Moines, for complainant.

Roger J. Kuhle, West Des Moines, for respondent.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This attorney disciplinary matter is before us for de novo review in accordance with Iowa Supreme Court rule 118.10. The Iowa Supreme Court Board of Professional Ethics & Conduct (hereinafter "board") charged respondent, William S. Smith, with violating probate rules, misleading the court regarding his claim for compensation, and taking an excessive fee. Following hearing, a division of the grievance commission found the allegations substantiated and recommended a public reprimand. Because we believe Smith's unethical conduct warrants a more severe sanction, we suspend his license for thirty days.

### I. *Background Facts and Proceedings.*

Attorney William Smith, age sixty-three, has practiced law for nearly forty years. Following graduation from law school in 1958, he served in the Air Force Judge Advocate's Office, and from 1974 to 1978 as Waterloo City Attorney. He is currently engaged in private practice in Waterloo, and estimates that he devotes ten to fifteen percent of his time to probate matters. By all accounts, Smith is an experienced and com-

petent lawyer who enjoys an excellent reputation among his peers for honesty and integrity. He has no prior disciplinary record.

The complaint before us stems from legal work Smith performed for Sarah Dorothy Seaman, an elderly client confined to a nursing home. In August 1994, Ms. Seaman needed assistance handling some of her affairs. Because her attorney had moved from the area, the nursing home contacted Smith, a former associate of Ms. Seaman's previous attorney. Smith acquired Ms. Seaman's power of attorney and provided her legal services such as assisting in the prepayment of her funeral arrangements. Recognizing that Ms. Seaman's funds were rapidly dwindling, Smith planned to apply for Title XIX benefits. In November 1994, he transferred $2000 of her assets (the statutory resource limit) to his client trust account as a cash reserve for her miscellaneous expenses.

Ms. Seaman died in December. Her estate was valued at approximately $19,200. She left a will, naming her two sisters as beneficiaries, neither of whom were still living. Two nieces and one nephew—both estranged from Ms. Seaman—became the only beneficiaries. None of the three desired any involvement with their deceased aunt's estate; Smith therefore had the will admitted to probate and received the court's permission to act as both executor and attorney. Further facts will be detailed as they pertain to the ethical complaints surrounding Smith's receipt of fees for these services.

### A. Premature payment of probate fees.

On the same day as his appointment, Smith withdrew the $2000 held for Ms. Seaman in his trust account and paid the sum to himself for executor and attorney fees. On February 6, 1995, he paid himself another $1000 from estate funds. Smith admits that neither of these payments complied with Iowa statutory and probate rules governing the compensation of fiduciaries.

Iowa Code sections 633.197 and 633.198 (1997) permit personal representatives and their attorneys to receive reasonable fees "as may be determined by the court" for services rendered. The timetable for authorizing such fees is set forth in Supreme Court Probate rule 2(d). The rule states:

> One half of the fees for ordinary services may be paid when the federal estate tax return, if required, and the Iowa inheritance tax return, if required, are prepared.... When a federal estate tax return is not required, the one-half fee may be paid when the Iowa inheritance tax return is prepared, or, when it is not required, when the inheritance tax clearance is filed. The remainder of the fees may be paid when the final report is prepared and the costs have been paid. The schedule for paying fees may be different when so provided by order of the court for good cause.

Iowa R. Prob. P. 2(d).

Smith concedes that when he took the $2000 fee he had neither prepared an Iowa inheritance tax return nor filed an inheritance tax clearance. When he took the $1000 fee, the final report had not been prepared, nor had costs been paid. Although the estate was promptly closed, his fees were nevertheless distributed three months prematurely and without court authorization.

The board charged, and the commission found, that Smith's receipt of probate fees without authorization violated DR 2–106(A) of the Iowa Code of Professional Responsibility for Lawyers (lawyer shall not collect an illegal fee) and DR 1–102(A)(5) (conduct prejudicial to the administration of justice). Prior decisions of this court clearly support these findings. *E.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Evans,* 537 N.W.2d 783, 785 (Iowa 1995); *Committee on Prof'l Ethics & Conduct v. Zimmerman,* 465 N.W.2d 288, 292 (Iowa 1991); *Committee on Prof'l Ethics & Conduct v. Coddington,* 360 N.W.2d 823, 824–25 (Iowa 1985).

### B. Misrepresentation to the court.

Not only did Smith obtain his probate fees without court authorization, the board charged—and the record reveals—that his probate filings inaccurately represented to the court that he was in compliance with rule 2(d). Smith's Application for Compensation of Executor and Attorney, filed in May 1995, affirmatively stated that "[f]ees will be paid

in accordance with Supreme Court Probate Rule 2(d)." Smith's testimony before the commission dispelled any notion of oversight in connection with this misrepresentation. When asked to explain why he tendered a knowingly false document to the court, he responded by blaming the standardized form. "It's a computer-generated, court-mandated type of application" he said, "and that's what we use."

Perhaps more telling is the discrepancy that appears in the final report filed contemporaneously with Smith's fee application. The disbursement schedule included the $2000 payment (made in December 1994) but it was the only item on the schedule not identified by date. Moreover, the item appeared as the *last* entry on the accounting when, by chronology, it was the *first* disbursement.

Smith attempted to rebut the concealment implied by this omission by explaining that all the other disbursements came from the estate checkbook and, when preparing the accounting, he only belatedly recalled the fee disbursement made months earlier from his trust account, and so it landed at the end of the list. The commission evidently placed little stock in this explanation, and neither do we. Our skepticism is reinforced by Smith's admission that when he filed the Iowa Fiduciary Return of Income he "erroneously" listed the disbursement date for the $2000 fee as "May 1995."

The commission characterized these missteps by Smith as "negligent" misrepresentations, nevertheless violative of DR 1–102(A)(4) (prohibiting conduct involving dishonesty, deceit, or misrepresentation). Of course the distinction between an intentional act and a negligent one tends to lose its force in the context of an ethics inquiry. The key question is whether the effect of the lawyer's conduct is "to mislead rather than to inform." *Committee on Prof'l Ethics & Conduct v. Baudino,* 452 N.W.2d 455, 458 (Iowa 1990). Substantial evidence in this record supports a finding of misrepresentation with respect to the application for compensation filed by Smith with the court.

### C. Excessive fees.

Lastly, the board charged Smith with taking fees exceeding (by nearly three-fold) the amounts allowed by Iowa Code section 633.197 (for the personal representative) and section 633.198 (for the attorney). Smith and the board agree that the scheduled fees for "all ordinary services" on an estate of $19,200 would total approximately $504, each, for the executor and attorney. Smith however had already withdrawn $3000 in estate funds to apply toward fees. So upon filing the final report he applied for, and received, "extraordinary" fees. The question is whether the fee he secured can be viewed as ethical in light of the record before us.[1]

Our probate code authorizes "further allowances" for "[n]ecessary and extraordinary services," including those in connection with "real estate, tax matters, and litigated matters." Iowa Code § 633.199; *see* Iowa R. Prob. P. 2(c). Smith's application for additional compensation stated:

> Additional time has been incurred in administering this estate, specifically, going through the personal effects of the decedent, making provisions for their distribution, assembling assets and obtaining funds, selling personal property, conferring and corresponding with heirs and beneficiaries, assuming the responsibility of maintaining and keeping of all funds and maintaining a receipts and disbursements ledger. There remains to be done yet the filing of the final report, attending final hearing, closing the estate, and making final distribution.

The record reveals that the services described by Smith amounted to going through decedent's personal effects and bills at a nursing home apartment, taking a box to the Goodwill, selling a watch and ring to a neighborhood jeweler, and contacting three relatives. Closing the estate involved neither the sale of real estate nor any litigation. The

---

1. The grievance commission, without explanation, failed to address the excessive fee issue in its findings and recommended sanction.

final accounting listed only eight receipts and twelve disbursements, three of which were for Smith and his secretary.[2] Although a fiduciary income tax return was filed, it reported no income. Contrary to Smith's application, there was in fact no final "hearing" to attend; the estate was finalized without Smith making any appearance before the court. In short, nothing about the administration of this estate appears extraordinary.

Witnesses for both the board and the respondent testified that requests for extraordinary fees are not the norm. Moreover, the record suggests it would be unusual for an attorney to seek extraordinary fees without personally appearing before the court to justify them. Here, Smith merely filed the documents with the probate clerk for routine consideration by the court. The judge who approved Smith's fees testified pursuant to subpoena. While declining to second-guess his order, he stated that if he had known all the facts he would have gone over the application in more detail and "probably would have raised some objections to some of the— or to all of the extraordinary fees."

Witnesses observed that in the unusual estate where a lawyer serves as both executor and attorney, it is customary to limit the total fee for services to one and one-half times the scheduled fee for the executor or attorney. "Never," reported Smith's own witness, an attorney with fifty years' probate experience, had he "heard of anybody getting a full executor's fee and an attorney's fee, never."

These same witnesses acknowledged that a small, unremunerative estate can take as much, if not more, time than a larger one. Yet even Smith's own time records do not justify the $3000 fee sought and awarded here. His fee statement, expanded from that submitted with the final report, shows 17.9 hours of professional services at $150 per hour for a total of $2610 due. No return of

the $390 overage has been requested by, or made to, the estate beneficiaries.

This record persuades us that Smith applied for, and received, an award of extraordinary fees that cannot be justified. The fee can only be described as excessive, in violation of DR 2–106(A).

## II. *Sanction.*

Although the board and Smith have little or no dispute over the operative facts here, they differ sharply in their view of the inferences to be drawn from them. Smith rests his plea for disciplinary leniency on a variety of factors: this was a small estate that no one else would bother with; he wrapped it up promptly without assistance or complaint from the decedent's only heirs; the fee he charged was reasonable and approved by the court; and any departure from probate rule 2(d) was, at worst, a mere technical "blip" on an otherwise spotless record of professional service. The board's proof, by contrast, portrays a capable but opportunistic lawyer whose reputation for integrity actually facilitated serious probate violations that would have gone unnoticed by beneficiaries or the court but for a routine audit of his trust account. On balance we are convinced the board has it right.

In recommending a public reprimand,[3] the grievance commission weighed Smith's long and honorable career, good moral character, and cooperation with the board as factors militating against a more severe penalty. Indeed the respondent's own testimony made plain that he regrets having opened himself to professional criticism and, worse yet, the misplaced trust of his colleagues. This appears to be an isolated instance of poor judgment unlikely to be repeated.

We are mindful that where a lawyer has taken fees early—but otherwise earned—in violation of probate rule 2(d), we have found

---

2. The record shows that Smith's long-time secretary performed the task of sorting through and organizing decedent's personal papers, for which she received three hours of compensation over and above her regular salary.

3. One commission member wrote separately to urge the case merited no more than a private admonition.

a public reprimand to be a sufficient sanction. *See Committee on Prof'l Ethics & Conduct v. Elson*, 430 N.W.2d 113, 115 (Iowa 1988); *Committee on Prof'l Ethics & Conduct v. Winkel*, 415 N.W.2d 601, 603 (Iowa 1987). The case before us however involves additional elements of misrepresentation and overcharging. *See Evans*, 537 N.W.2d at 785–86 (thirty-day suspension for receipt of fee without court approval, overcharging, and prior reprimand). Smith's lack of candor, both in his accounting practices and in his representations to the court, have violated the bond of trust so essential to the effective functioning and public respect for our profession and the judicial branch. *See Committee on Prof'l Ethics & Conduct v. Ramey*, 512 N.W.2d 569, 572 (Iowa 1994) (counsel's false statements to court, withholding of exculpatory evidence, and prior disciplinary record warranted six-month suspension); *Zimmerman*, 465 N.W.2d at 292 (excessive fees combined with knowingly misleading the court and prior reprimand warranted six-month suspension).

We suspend William Smith's license to practice law in this state indefinitely, with no possibility of reinstatement for thirty days. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct. R. 118.12. Upon application for reinstatement, the respondent shall furnish proof that he has complied with the notification and disengagement requirements of rules 118.13 and 118.18. Costs are assessed to the respondent.

**LICENSE SUSPENDED.**