# IN THE SUPREME COURT OF IOWA

No. 11–1645

Filed February 24, 2012

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**
Complainant,

vs.

**ROBERT J. HEARITY,**
Respondent.

On review from the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends attorney's license be suspended. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Robert J. Hearity, Waterloo, pro se.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Robert J. Hearity alleging twelve violations of the Iowa Rules of Professional Conduct in his work for five clients. Hearity failed to answer the Board's complaint or otherwise respond, and as a result, his license has been under temporary suspension since January 11, 2011. A division of the Grievance Commission of the Supreme Court of Iowa determined Hearity engaged in "multiple instances of misconduct" and unanimously recommended a suspension. Upon our de novo review, we find Hearity has engaged in multiple acts of misconduct. We suspend his license to practice law indefinitely with no possibility of reinstatement for one year from the date of this opinion.

## I.  Scope of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 528 (Iowa 2011) (citation and internal quotation marks omitted). We respectfully consider the commission's findings, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 36 (Iowa 2011). "The [B]oard must establish attorney misconduct by a convincing preponderance of the evidence." *Dunahoo*, 799 N.W.2d at 528. If we find the Board proved misconduct, we may impose a sanction more or less severe than the commission's recommended sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 282 (Iowa 2009).

## II.  Prior Proceedings and Findings of Fact.

On June 27, 2011, the Board filed its complaint against Hearity, alleging five counts of misconduct. Hearity failed to answer the Board's complaint against him and failed to comply with the Board's requests for

information. "[T]he allegations of an ethics complaint are deemed admitted if the respondent fails to answer within the specified time." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 506 (Iowa 2011); *accord* Iowa Ct. R. 36.7. At the evidentiary hearing, the commission properly found the complainant's allegations admitted. The commission received into evidence forty-seven exhibits. The commission considered brief testimony from Sarah Burgess, who hired Hearity to defend her charge of driving while intoxicated (DUI) in Georgia. Based upon this record, we find the following facts on our de novo review.

Hearity became a licensed attorney in Iowa in 1982. He resided and practiced in Black Hawk County. We suspended his license to practice law pursuant to Iowa Court Rule 35.21 on September 15, 2010, for failure to comply with an obligation owed to the Iowa Department of Revenue. On January 11 and March 8, 2011, this court again temporarily suspended his license, pursuant to Iowa Court Rule 34.7(3), for his failures to respond to Board inquiries. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, ___ N.W.2d ___, ___ (Iowa 2012) (discussing purpose and effect of temporary license suspension for failure to respond to the Board). Hearity has yet to participate in this proceeding, and his license remains suspended.

**A. Estate of Mary S. Theroith (Count I).** Mrs. Theroith died intestate on January 28, 2007. A month later, the estate's coadministrators retained Hearity as counsel to facilitate the estate's closing. Three and one-half years later, the estate still had not closed. While representing the coadministrators, Hearity filed the report and inventory two months late, never filed the interlocutory report despite receiving three delinquency notices, and twice asked the district court for additional time to close the estate. The district court learned of Hearity's

September 15, 2010 suspension and, on September 27, removed him from the case and appointed attorney Timothy Ament as substitute counsel. Ament had to ask Hearity for the case file three times before Hearity turned it over to him in late November. Ament identified numerous tasks Hearity had left unresolved, including paying the *Waterloo Courier* for publication of notice, ascertaining whether the Estate Recovery Program had a claim, addressing three pending claims, collecting funds held by the Child Support Recovery Unit, filing tax returns, and distributing assets.

**B. Robert Campbell (Count II).** In September 2009, Campbell retained Hearity in six criminal matters pending in Black Hawk County. Hearity filed his appearances in all six cases and collected a $5000 advance fee. In February 2010, Campbell filed a complaint with the Board against Hearity. Hearity filed a response with the Board regarding Campbell's complaint, but never responded to the Board's August 11 request for information and documentation.

**C. Redell R. Walls III (Count III).** Hearity represented Walls in four criminal matters in Black Hawk County beginning in October 2009. Following his conviction and sentence, Walls filed a pro se appeal in one of the cases. Our clerk of court sent Hearity a courtesy notice informing him that as counsel of record in the trial court he was presumed to be appellate counsel. The notice directed him to promptly prosecute the appeal or file a motion to withdraw. Hearity did not respond to the notice. A month later, the clerk issued him a notice of default and assessment of penalty because he failed to file the combined certificate and pay the filing fee. The notice informed Hearity that "unless this default is remedied within fifteen days . . . the . . . appeal will be dismissed." The notice also advised Hearity that a dismissal order would

be forwarded to the Board and may be grounds for an investigation. Hearity did not remedy the default, and Walls' appeal was dismissed.

**D. Sarah Burgess (Count IV).** On June 9, 2010, Burgess met with Hearity about her DUI case pending in Georgia. Her court date was set for June 29. Hearity assured Burgess he could represent her in Georgia by gaining admission to the Georgia court pro hac viće. Burgess paid Hearity $500 at this meeting, without any written agreement. Hearity told Burgess this advance fee would cover the entire representation, unless he had to appear in Georgia. He advised Burgess she did not need to travel to Georgia. At the close of the meeting, Hearity assured Burgess: "I'll take care of it for you."

Burgess attempted to reach Hearity several times on June 15 to receive an update on her pending hearing. After several attempts, Hearity called back to inform her he was still trying to obtain pro hac viće approval. After another week of negligible progress, Burgess arranged a meeting for June 23. She asked for her money back and the case file. Hearity refused to refund the money at the meeting and insisted he would review the file and prepare a bill. Hearity claimed he worked 5.25 hours on the matter and charged a $250 hourly rate for a total bill of $1312.50. His bill reflects charges for "research of Georgia law, including pro hac viće admission." He never refunded her $500.

Burgess obtained counsel in Georgia. She paid the Georgia counsel $975. She also had to travel to Georgia on June 29 to appear at her court hearing.

**E. Practicing Law While Suspended (Count V).** On September 23, 2010, Hearity appeared on behalf of the father in a Black Hawk County juvenile permanency hearing. Judge Block

questioned Hearity about the September 15 order suspending his law license:

> Q. Now, Mr. Hearity, are you appearing on behalf of Mr. Grimson?  A. Yes, Your Honor.
>
> Q. All right.  I was provided notice from the Supreme Court that your license had been suspended.  Has it been reinstated?  A.  I guess I have not even received that notice so I will leave the room.
>
> Q. You didn't receive a notice from the Supreme Court?  A.  I have not received that, but it may be in my mail, Judge.  That's all I can say.
>
> Q. Well, I think, you know, this is my copy, but if you want to review it, I can't believe they haven't provided you notice of that.  A.  It may be in my mail, Your Honor.  I'm not doubting what you say at all.

Postal service records show the Office of Professional Regulation sent the September 15 order by certified mail to Hearity's home, and on September 17, he signed and accepted the certified mailing—six days before the hearing.

### III.  Ethical Violations.

**A. Lack of Diligence and Failure to Expedite Litigation.**  The Board alleged Hearity violated rules 32:1.1 and 32:3.2 that govern diligence and expedition of litigation.  The commission found Hearity violated both rules in the Theroith estate and Walls appeal.  We agree.

Rule 32:1.3 requires counsel to "act with reasonable diligence and promptness."  This rule requires an attorney to handle matters in a "reasonably timely manner."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 678 (Iowa 2010).  We find Hearity's neglect of the Theroith estate over three and one-half years and his failure to prosecute Walls' appeal resulting in its dismissal demonstrate a lack of diligence in violation of rule 32:1.3.

Rule 32:3.2 requires a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client." "The purpose of this rule is to prevent the 'use of tactics that *unreasonably* delay litigation.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011) (quoting 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 28.2, at 28–3 (3d ed. Supp. 2007)). On April 8, 2009, the district court filed an order requiring Hearity to participate in a review hearing in six months because the court was concerned Hearity was not taking actions to close the Theroith estate. Hearity asked to continue this hearing three times, until the district court finally removed Hearity from the case in September 2010. Hearity had left much work to be completed before the estate could be closed. Hearity also delayed the work of substitute counsel by waiting until late November to turn over the case file after three written requests. We find Hearity used unreasonable tactics to delay litigation in order to mask his dilatory handling of the matter. Accordingly, we find Hearity violated rule 32:3.2.

**B. Unreasonable Fees and Failure to Communicate Regarding Fees.** The Board alleged Hearity violated rules 32:1.5(a) and (b), which govern fee agreements, in the Burgess DUI matter. The commission found Hearity violated both rules. We agree. Rule 32:1.5(a) prohibits attorneys from agreeing to or collecting an unreasonable fee and lists eight factors to determine "reasonableness." Burgess paid Hearity a $500 advance fee to handle the matter. He lacked a license to practice law in Georgia and did nothing to resolve her case pending there. Hearity billed Burgess for $1312.50, but Burgess never agreed to pay this amount nor did Hearity collect this sum. His itemized billing statement falls short of justifying the $500 he refused to refund to

Burgess. Burgess had to hire Georgia counsel to resolve the case for her at an additional cost of $975. In the absence of any justification for the fee from Hearity, we find he violated rule 32:1.5(a).

Rule 32:1.5(b) requires the attorney to communicate with the client, preferably in writing, "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible." Hearity did not enter into a written fee agreement with Burgess. After their initial meeting, Burgess believed the parties agreed the $500 advance fee would represent the total cost of Hearity's representation unless Hearity had to travel to Georgia, which he did not. Several weeks later, Hearity billed Burgess for $1312.50. We find Hearity failed to properly communicate the fee and expense rate for which Burgess was responsible. We find Hearity violated rule 32:1.5(b).

**C. Failure to Properly Terminate Representation.** The Board alleged Hearity's failure to prosecute or withdraw from Walls' appeal violated rules 32:1.16(c) and (d). The commission found Hearity violated each rule. Rule 32:1.16(c) requires a lawyer to "comply with the applicable law requiring notice to or permission of a tribunal when terminating a representation." As Walls' trial counsel, Hearity was deemed his appellate counsel. Iowa R. App. P. 6.109(4). "An attorney may not withdraw from representation of a party before an appellate court without permission of that court unless another attorney has appeared or simultaneously appears for the party." *Id.* r. 6.109(5). No other counsel appeared on Walls' behalf. Hearity, however, effectively ceased representing Walls on appeal without the appellate court's permission to withdraw. As a result of Hearity's failure to respond to the default notice, Walls' appeal was dismissed. We find Hearity in violation of rule 32:1.16(c).

Rule 32:1.16(d) requires a lawyer to "take steps to the extent reasonably practicable to protect a client's interest." The record shows Hearity did nothing to protect Walls' interests in this appeal. His inaction led to dismissal of the appeal. We find Hearity violated rule 32:1.16(d).

**D. Failure to Respond to the Board.** The Board alleged Hearity violated rule 32:8.1(b) by failing to respond to the Board's discovery requests about Campbell's fee complaint. Rule 32:8.1(b) states a lawyer shall not "knowingly fail to respond to a lawful demand for information from . . . [a] disciplinary authority." "Knowingly" is defined as "actual knowledge of the fact in question" and "may be inferred from circumstances." Iowa R. Prof'l Conduct 32:1.0(f). On August 11, 2010, the Board asked Hearity to provide documentation concerning the scope of representation and fee agreement with Campbell. Hearity did not respond. This instance is emblematic of Hearity's continued failure to participate in this disciplinary process. We find Hearity violated rule 32:8.1(b).

**E. Disobedience of Obligations to a Tribunal.** The Board alleged Hearity violated rule 32:3.4(c) in the Theroith and Walls matters and in the juvenile court proceeding. The commission found Hearity did not violate this rule. We agree with the commission. In *Dunahoo*, we stated:

> Rule 32:3.4(c) is entitled "Fairness to opposing party and counsel," and the rule states a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal." The comments to the rule suggest its purpose is to ensure "[f]air competition in the adversary system" through proper adherence to discovery and evidence rules.

799 N.W.2d at 534 (quoting Iowa R. Prof'l Conduct 32:3.4(c), cmt. 1). The Board has not established Hearity's misconduct in these matters undermined the competitive fairness of the adversary process or

disadvantaged opposing counsel. Accordingly, we find rule 32:3.4(c) was not violated.

**F. Unauthorized Practice of Law.** The Board alleged Hearity violated rule 32:5.5(a) by appearing for a client in the juvenile court proceeding six days after accepting receipt of this court's order suspending his license to practice law. The commission found Hearity violated this rule. Rule 32:5.5(a) prohibits a lawyer from "practic[ing] law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction." The rule contains no express scienter requirement. On September 17, 2010, Hearity acknowledged receipt of the mailing that contained the order suspending his law license. Receipt of certified mail constitutes notice as a matter of law. *See Burgess v. Great Plains Bag Corp.*, 409 N.W.2d 676, 680 (Iowa 1987) (holding plaintiff deemed to have notice of contents of accepted certified mail regardless of whether he read the documents). Six days later, Hearity appeared in court. He was not authorized to practice law in this state at that time. We find Hearity violated rule 32:5.5(a).

**G. False Statement to Court.** The Board alleged Hearity violated rule 32:3.3(a)(1) during his juvenile court appearance. The commission found Hearity did not violate this rule. Rule 32:3.3(a)(1) prohibits a lawyer from "knowingly . . . mak[ing] a false statement of fact or law to a tribunal." "Knowingly" is defined as "actual knowledge of the fact in question" and "may be inferred from circumstances." Iowa R. Prof'l Conduct 32:1.0(f). After the district court confronted Hearity about the order, Hearity stated, "I guess I have not even received that notice so I will leave the room." Under further questioning by the court, Hearity admitted the order of suspension "may be in my mail." The commission determined that "Hearity signed the certified mail return receipt

acknowledging receipt of the notice, but there was insufficient evidence that he opened the mail and was aware of the suspension at the time of his exchange with the Court."

On our de novo review of the record, we find Hearity had actual knowledge of his suspension. The United States Postal Services form signed by Hearity to receive the mailing, PS Form 3811, lists the Office of Professional Regulation as the sender. He accepted this mailing six days before the court hearing. Indeed, he displayed consciousness of guilt by immediately stating, "I will leave the [court]room" when Judge Block noted his suspension. Most lawyers signing for a certified mailing from the Office of Professional Regulation will open the envelope upon receipt. We decline to infer Hearity remained blissfully ignorant of his suspension in the absence of any persuasive explanation. An ostrich-like, head-in-the-sand approach should not immunize attorneys from an inference of actual knowledge. Lawyers who accept a certified mailing with notice of their suspension and who refuse to participate in disciplinary proceedings should not expect our court to draw inferences in their favor. We find that, based on the circumstances, Hearity actually knew before he appeared in court six days later that his license was under suspension. Our finding is supported by the allegations of the Board's complaint against Hearity deemed admitted by his failure to answer. Accordingly, we find Hearity knowingly made a false statement to the juvenile court in violation of rule 32:3.3(a)(1).

**H. Rule 32:8.4 Misconduct.** The Board alleged Hearity violated rules 32:8.4(c) and (d). The commission found he violated both rules. Rule 32:8.4(c) states it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The Board contends Hearity violated this rule when conversing with the district

court at the juvenile permanency proceeding. "When an attorney's conduct violates a specific rule involving dishonesty, fraud, deceit, or misrepresentation, we will not find the same conduct to also violate a general rule prohibiting that conduct, such as rule 32:8.4(c)." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 587 (Iowa 2011); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). We have already determined Hearity violated rule 32:3.3(a)(1) by making a knowingly false statement to the district court in the juvenile permanency proceeding. Accordingly, we decline to hold this same conduct violates rule 32:8.4(c).

Rule 32:8.4(d) states it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Conduct prejudices the administration of justice when it impedes "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010) (citation and internal quotation marks omitted). Hearity's missteps forced the district court to appoint a new attorney to close the Theroith estate and forced Walls to resort to postconviction relief to challenge his conviction and sentence. This misconduct impeded the efficient and proper operation of the courts. Accordingly, we find Hearity violated rule 32:8.4(d).

**IV. Sanction.**

"There is no standard sanction for particular types of misconduct. While prior cases are instructive, we craft an appropriate sanction in light of each case's unique circumstances." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, ___ N.W.2d ___, ___ (Iowa 2012) (citation omitted). In formulating a sanction,

"we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008)). The commission unanimously recommended we suspend Hearity's license for eighteen months after "[t]aking into account the multiple instances of misconduct and failure on the part of [Hearity] to demonstrate any appreciation for the seriousness of his misconduct."

We have suspended an attorney's license for substantial lengths of times when the attorney's neglect is compounded by other serious offenses such as disregarding court orders or making misrepresentations to the court. *See, e.g., Dunahoo*, 799 N.W.2d at 535 (suspending license for one year for neglect compounded with trust account violations and court misrepresentations); *Johnson*, 792 N.W.2d at 683 (three-year suspension for neglect, failure to return client files and unearned fees, failure to respond to Board's investigation, and other violations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 821 (Iowa 2007) (suspending license for one year for neglect and misrepresentations to court); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 816 (Iowa 2007) (suspension for eighteen months for neglect compounded with disobedience of court orders and misrepresentations to court and clients); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters*, 646 N.W.2d 111, 113–14 (Iowa 2002) (suspending license for eighteen months for neglect, deceit to mask the neglect, and refusal to comply with Board inquiries). Here, a significant

sanction is warranted by our finding that Hearity knew of his suspension when he appeared in juvenile court and misrepresented his awareness to the court.

We agree with the commission that Hearity's "complete failure to respond to the [Board] and his decision not to participate in these proceedings . . . show . . . a complete disregard for the applicable rules." Moreover, "[w]e have repeatedly emphasized how important it is for an attorney to cooperate with disciplinary authorities when a complaint has been filed against the attorney." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 260 (Iowa 2004). Hearity's failure to cooperate is a significant aggravating factor.

Hearity has a history of similar ethical misconduct, which is another aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 634–35 (Iowa 2009). The Board admonished Hearity in 2006 and 2010 for failing to comply with Board investigations. He was admonished in 2007 for failing to cure a probate delinquency, and in 2010, he was admonished for neglecting an appeal.

Because Hearity failed to participate in these proceedings, the record is devoid of evidence of any mitigating circumstances. As the commission noted, "There is no evidence that [Hearity] suffers from any conditions which prevent him from responding or any evidence that he feels any remorse for his misconduct." *See Boles*, ___ N.W.2d at ___ (noting as mitigating factors extensive pro bono defense work and volunteer community service).

Lawyer discipline is necessary to protect the public and courts from persons unfit to practice law and to ensure public confidence in the integrity of our system of justice. *Gottschalk*, 729 N.W.2d at 821. We believe a substantial sanction is needed here to achieve the goals of

lawyer discipline. After careful consideration of the record, precedent, aggravating factors, absence of any mitigating factors, his temporary suspension since January 2011, and the suspension recommended by the commission, we conclude a one-year suspension is appropriate.

### V. Conclusion.

We suspend Hearity's license to practice law in this state with no possibility of reinstatement for one year from the date of this opinion. The suspension applies to all facets of the practice of law, as provided by Iowa Court Rule 35.12(3), and requires notification to clients, as provided by Iowa Court Rule 35.22. The prior temporary suspension for failure to respond to the Board is terminated. *See Cunningham*, ___ N.W.2d at ___. Upon any application for reinstatement, Hearity must establish that he has not practiced law during the suspension period and that he has complied with the requirements of Iowa Court Rules 35.13 and 35.22. He must also provide medical proof of his fitness to practice law and must successfully complete the Multistate Professional Responsibility Examination (MPRE). The costs of this proceeding are assessed against Hearity pursuant to rule 35.26(1).

**LICENSE SUSPENDED**.

All justices concur except Zager, J., who takes no part.