# IN THE SUPREME COURT OF IOWA

No. 16–1988

Filed March 10, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**RICHARD DILLON CROTTY,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission found an Iowa attorney violated several rules of professional conduct while representing a personal representative in an estate and a claimant in a worker's compensation claim. The commission recommends a ninety-day suspension of the attorney's license. We suspend the attorney's license for sixty days. **LICENSE SUSPENDED.**

Tara van Brederode and Wendell J. Harms, for complainant.

Richard D. Crotty, Omaha, Nebraska, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint alleging that an Iowa lawyer violated several disciplinary rules while representing a personal representative in an estate and in handling an appeal of a worker's compensation case. After a hearing, the Grievance Commission of the Iowa Supreme Court found the lawyer violated several rules and recommended his license to practice be suspended for ninety days. Upon our de novo review, we find the lawyer violated various rules, and we conclude his license should be suspended with no possibility of reinstatement for sixty days from the date of this opinion.

## I. Prior Proceedings.

Richard Crotty was first licensed to practice law in Iowa in 1975. Upon investigation of a complaint lodged against Crotty in 2013, the Iowa Supreme Court Attorney Disciplinary Board (Board) filed a proceeding before the Grievance Commission of the Supreme Court of Iowa (commission) alleging Crotty violated several ethical rules in representing the administrator of an estate and in representing a claimant in a worker's compensation case.

Following a hearing, the commission filed its findings of facts, conclusions of law, and recommendations with this court on November 17, 2016. The commission found Crotty violated several ethical rules while representing the administrator of the estate when he failed to disclose to the court that certain documents filed with the court in the probate proceeding bore forged signatures and by charging and receiving excessive and unauthorized attorney fees. The commission found Crotty violated ethical rules in the worker's compensation matter by practicing law after his license had been suspended for failing to

comply with continuing legal education requirements. The commission recommended Crotty's license to practice law in Iowa be suspended for at least three months and that as a condition of any reinstatement he be required to show completion of at least eight hours of continuing legal education on probate law.

## II. Findings of Fact.

**A. The Cleaver Estate.** While practicing law in Council Bluffs in 2012, Crotty was contacted by Leonard Cleaver who requested legal representation. Leonard sought Crotty's counsel in enforcing a judgment lien against Nancy Cleaver, the ex-wife of Leonard's father, Richard Cleaver.[1]

When the marriage of Nancy and Richard was dissolved in 2006, the family residence was awarded to Nancy. Richard was granted personal property and a judgment against Nancy in the amount of $34,600, payable upon sale of the residence. Richard died intestate in 2007, leaving four sons as his only heirs. Nancy sold the residence in 2012, but the judgment lien was not satisfied at the time of the sale.

Leonard and Crotty signed an attorney fee agreement on August 21, 2012. The agreement did not include a description of the scope or purpose of Crotty's representation, but it provided for a one-third contingent fee.[2] Crotty sent letters dated August 22 to Leonard's siblings, Richard Jr., Ronald, and Michael, informing them of his representation of Leonard in the effort to enforce the judgment lien

---

[1]Nancy was the stepmother of Richard's four sons: Richard Jr., Ronald, Leonard, and Michael.

[2]Although the heading on the contract read "Attorney Fee Contract (Personal Injury)," the only objective of the representation discussed by Crotty and Leonard before signing it was collection of the judgment against Nancy.

against Nancy.[3]  Crotty also sent a letter to Nancy demanding prompt payment of the judgment.

Having concluded that any action against Nancy to enforce the judgment should be brought by Richard Cleaver's estate, Crotty prepared and Leonard signed a petition for administration and appointment of an administrator.  A new attorney fee agreement was also signed on September 12 providing Crotty would represent Leonard "in connection with the estate of [Richard Cleaver Sr.]."[4]  The court appointed Leonard administrator of the estate and Leonard formally designated Crotty as his attorney for the administration of the estate on September 13.

Leonard told Crotty that two of his siblings—Richard Jr. and Ronald—were not supportive of the estate's claim against Nancy and wanted nothing to do with it.  Relying on Leonard's representation, Crotty prepared renunciation documents for signature by Richard Jr. and Ronald and gave the documents to Leonard on September 19.  Leonard left Crotty's office with the documents and brought them back bearing signatures later the same day.  Crotty's secretary thought it unusual that Leonard could have secured his brothers' signatures in less than an hour.  Yet when Crotty asked Leonard directly about the authenticity of the signatures, Leonard attested that his brothers had signed the renunciations.  Relying on Leonard's affirmation of the authenticity of his brothers' signatures, Crotty filed the renunciations with the court.

---

[3]The letters informed Richard Jr., Ronald, and Michael that if they did not respond within ten days, Crotty would assume they did not wish to proceed with collection of the judgment.

[4]Like the attorney fee contract signed by Crotty and Leonard on August 21, this one also called for a contingent attorney fee of one-third of any recovery.

Nancy responded quickly through counsel to Crotty's demand letter and agreed to pay the sum of $34,600 in exchange for satisfaction of the judgment lien. On September 24, Crotty presented Leonard's application to a district court judge for approval of the estate's settlement of the claim against Nancy and Crotty's claim for attorney fees. The application briefly described the factual and legal bases for the estate's claim against Nancy and requested the court's approval of a settlement in the amount of $34,600 and Crotty's attorney fee. Notably, the application did not disclose to the court the gross amount of the attorney fee claimed by Crotty in connection with the proposed settlement or a formula for its computation; nor did the application itemize the amount of time spent or the work performed by Crotty in achieving the settlement for the estate. The district court signed an order prepared and presented by Crotty, finding the settlement was "reasonable and in the best interests of the estate," and further finding "[Crotty's] fees hereunder are fair and reasonable and were necessary."[5]

Crotty prepared and Leonard signed a release which was provided to Nancy in consideration for her payment of $34,600 to the estate. Crotty retained the sum of $11,533.33 from the settlement proceeds as his fee. He distributed the remainder of the proceeds to Leonard for distribution to the heirs.

---

[5]Richard Jr., Ronald, and Michael received no notice of Leonard's application for approval of the settlement or Crotty's fee before the court entered its order approving both on September 24. The district court judge who entered the order later explained in testimony before the grievance commission that the order approved an attorney fee for Crotty's legal services in collecting the judgment; the court did not view the order as an approval of either an ordinary or extraordinary fee for services rendered by Crotty in the administration of the estate.

Leonard made uneven initial distributions of the net settlement proceeds to his brothers: $9033.33 to Michael, $1500 to Richard Jr., and $1500 to Ronald. Richard Jr. and Ronald found it peculiar that the distributions to them were in cash and decided to investigate the terms of the settlement. In the course of their investigation, Richard Jr. and Ronald revealed to Crotty that they had not signed the renunciations. Upon learning this, Crotty sent a letter to Leonard on October 23 revealing Crotty's discovery of the fact that the signatures on the renunciations were forged and demanding that he return the settlement proceeds.

Although the record does not disclose the substance of Leonard's response to Crotty's letter of October 23, Crotty concedes that, when confronted, Leonard admitted he forged his brothers' signatures on the renunciations. Armed with Leonard's admission of the forgeries, Crotty prepared and Leonard signed an application for the appointment of a successor administrator. The application filed on November 14 alleged that Leonard's actions as administrator had "resulted in less than amicable relationships with the remaining heirs" and that the best interests of the estate would be served by the appointment of his brother, Ronald, as administrator.

The application for appointment of a successor did not inform the court that the signatures on the two renunciations previously filed in the case were forged, nor did it reveal that Leonard had made uneven distributions of the settlement proceeds to the heirs. However, Crotty testified that he revealed the forgeries in conversations with two district court judges before the order appointing Ronald as the successor administrator was issued on November 14. Both of those judges testified before the grievance commission. One of them did not recall having such

a conversation with Crotty; the other judge—the one who signed the order appointing Ronald as successor administrator—recalled having a conversation with Crotty about the fact that the renunciations bore forged signatures but did not recall discussing other measures Crotty might or should take to memorialize the forgeries in the court file.

After several months of inactivity in the estate, Crotty filed a final report and an accounting which included his request for an ordinary attorney fee of $812.[6]  Ronald subsequently objected to the final report on the ground that the accounting attached to it by Crotty inaccurately reported the distributions made by Leonard to the heirs.  Neither the final report filed by Crotty nor the attorney fee requested by Crotty were approved by the court.  Crotty moved to withdraw as counsel for the administrator, asserting the estate's nonpayment of an attorney fee as the reason.  The district court granted Crotty's unresisted motion on April 29.

The estate remained open.  On June 1, the clerk of court issued a delinquency notice informing Ronald, who was unrepresented at the time, of Crotty's failure to file an inventory in the estate.

On June 11, Crotty filed a small claims case against Ronald asserting a claim in the amount of $812 for attorney fees for legal services rendered in the administration of the estate.  Ronald disputed Crotty's claim, but the parties reached a compromise settlement.  Ronald paid Crotty the sum of $670 in exchange for a release and dismissal of the small claims case.

---

[6]The final report filed by Crotty on March 7, 2013, did not refer to the fact that the signatures on the renunciations were forged.

On September 3, the district court ordered Ronald to appear and show cause why he should not be held in contempt for failing to file an inventory report in the estate. Ronald appeared as ordered, and the court directed him to hire counsel to complete the work necessary to close the estate. In compliance with the court's directive, Ronald hired Leo Martin as his counsel for completion of the estate proceedings.

On January 9, 2014, Martin filed a report and inventory together with affidavits signed by Richard Jr. and Ronald attesting that their signatures were forged on the renunciations filed earlier in the estate proceedings. Martin also filed an application requesting instructions from the court as to the amount of attorney fees Crotty was entitled to for his services to the estate and for a determination of how the estate's only asset—the settlement proceeds—should be distributed.[7] Following a hearing on March 6, the district court ordered Crotty to refund $670 to the estate because that fee had neither been earned nor approved by the court. In its April 16 order, the court further found that the fair and reasonable extraordinary fee for Crotty's services to the estate in securing payment of the judgment against Nancy was $5000[8] and ordered Crotty to refund $7203.33 to the estate within thirty days.[9]

---

[7]Because Crotty had already received fees in the amounts of $11,533.33 and $670 from the estate, Martin's application requested the court to decide whether Crotty had been overpaid and should be ordered to refund fees to the estate. The application filed by Martin also revealed the unequal amounts of distributions paid to the four heirs to date and requested the court to determine whether those distributions should be reallocated among them.

[8]The court found Crotty had spent twenty hours in securing payment of the judgment and a reasonable rate for the services was $250 per hour.

[9]The court directed the administrator to distribute equally among the heirs any estate assets remaining after paying the fees of the successor attorney and administrator and to file an amended final report.

Crotty filed a motion to set aside the district court's order and sought a new hearing. The court rejected Crotty's posthearing requests for relief, and Crotty filed a notice of appeal on June 18. The appeal was dismissed, however, because Crotty failed to comply with our rules of appellate procedure. After the administrator sought further court intervention in securing the repayment, Crotty eventually refunded the sum of $7203.33 to the estate.

**B. Freeman Worker's Compensation Matter.** Crotty's license to practice law in Iowa was suspended by an order of this court on December 5, 2014, for failing to comply with Iowa Court Rule 41.4. *See* Iowa Ct. R. 41.4 (requiring Iowa attorneys to file annual report with commission on continuing education). On December 9, while suspended from the practice of law, Crotty signed a proof brief as counsel for Robert Freeman who was the claimant in a worker's compensation case. On December 12, Crotty signed the final brief as Freeman's counsel in the same case.

### III. Scope of Review.

Our review of the record made before the commission is de novo. Iowa Ct. R. 36.21(1); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 375 (Iowa 2002). The burden to prove ethical violations by a convincing preponderance of the evidence is allocated to the Board. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 545 (Iowa 2012). This standard of proof is less demanding than proof beyond a reasonable doubt, but more demanding than proof by a preponderance of the evidence. *Id.* "We give respectful consideration to the commission's finding of fact and recommended sanction, but we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 461 (Iowa 2014).

**IV. Violations.**

The Board alleged Crotty violated several ethical rules in representing the administrator of the Cleaver estate and claimant Robert Freeman in a worker's compensation case. Like the commission, we find Crotty violated ethical rules in both matters.

**A. The Cleaver Estate.** The Board alleged that Crotty violated several ethical rules in connection with the Cleaver estate. First, the Board alleged Crotty obtained fees in violation of Iowa Rule of Professional Conduct 32:1.5(a) (violating restrictions imposed by law) by violating Iowa Court Rules 7.2(2) (ordinary fees), 7.2(3) (extraordinary fees), and 7.2(4) (schedule for ordinary fee collection) and further alleged that by taking the unauthorized fees Crotty violated Iowa Rule of Professional Conduct 32:8.4(d) (prejudice to the administration of justice). Second, the Board alleged Crotty violated several rules of ethics in connection with his client's forging of signatures on estate documents filed with the court. Specifically, the Board alleged he violated Iowa Rules of Professional Conduct 32:1.2(d) (counselling or assisting a client to engage in crime or fraud), 32:1.4(a)(5) (communicating legal limits of lawyer's powers to client), 32:3.3(a)(3) (candor to court), 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The commission found Crotty violated all of these rules except rule 32:1.4(a)(5).

1. *Fees obtained.* The Board alleged and the commission found Crotty violated Iowa Rules of Professional Conduct 32:1.5(a) and 32:8.4(d) in connection with the fee he obtained for his work in the Crotty estate. We agree.

Rule 32:1.5(a) of the Iowa Rules of Professional Conduct provides that "[a] lawyer shall not . . . charge, or collect an unreasonable fee or an

unreasonable amount for expenses, or violate any restrictions imposed by law." Iowa R. Prof'l Conduct 32:1.5(a). Our rules of probate procedure impose several restrictions on the process for obtaining attorney fees in probate matters. A violation of any of those probate rules can thereby also constitute a violation of rule 32:1.5(a).

In our rules of probate procedure, fees for ordinary services are governed by rules 7.2(2) and 7.2(4), and fees for extraordinary services are governed by rule 7.2(3). Rule 7.2(2) provides, "When fees for ordinary services are sought pursuant to Iowa Code sections 633.197 and 633.198, proof of the nature and extent of responsibilities assumed and services rendered shall be required." Iowa Ct. R. 7.2(2). Rule 7.2(4) prescribes a timeline for the payment of such fees. *Id.* r. 7.2(4). When, as was the case in the Cleaver estate, neither a federal estate tax return nor an Iowa inheritance tax return is required, one-half of the fees for ordinary services may be paid when the probate inventory is filed. *Id.* The commission found Crotty's taking of the $670 fee before a probate inventory was filed violated a temporal restriction on taking fees for ordinary services and therefore also constituted a violation of rule 32:1.5(a). We agree. Crotty violated rule 7.2(4) and rule 32:1.5(a) in taking a fee for ordinary services before the inventory was filed. Further, Crotty violated rule 7.2(2) by collecting an ordinary fee without justifying the reasonableness of his claim through an itemized statement of services rendered. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Arzberger*, 887 N.W.2d 353, 365 (Iowa 2016).

Rule 7.2(3) provides,

> When an allowance for extraordinary expenses or services is sought pursuant to Iowa Code section 633.199, the request shall include a written statement showing the necessity for such expenses or services, the responsibilities assumed, and

the amount of extra time or expense involved. In appropriate cases, the statement shall also explain the importance of the matter to the estate and describe the results obtained. The request may be made in the final report or by separate application. It shall be set for hearing upon reasonable notice, specifying the amounts claimed, unless waivers of notice identifying the amounts claimed are filed by all interested persons. The applicant shall have the burden of proving such allowance should be made.

Iowa Ct. R. 7.2(3). The commission found Crotty violated this rule—and thereby rule 32:1.5—by taking a contingent fee in the amount of $11,533.33, substantially in excess of the statutory limit on fees for ordinary services. *See* Iowa Code § 633.197 (2017) (prescribing limit of fees payable to personal representatives for ordinary services); *id.* § 633.198 (authorizing compensation of attorney for personal representative to be "such reasonable fee as may be determined by the court, for services rendered, but not in excess of the schedule of fees herein provided for personal representatives"). We conclude the Board proved Crotty violated rule 7.2(3) by taking the contingent fee without requesting a hearing on the application or filing waivers signed by the heirs.[10]

Iowa Rule of Professional Conduct 32:8.4(d) provides "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). The Board urges that Crotty's conduct in the Cleaver estate

---

[10]As we have noted, the district court concluded in the estate proceedings that the contingent fee of $11,533.33 taken by Crotty for collecting the judgment was unreasonable in amount when considered in light of the factors listed in rule 32:1.5(a). The Board alleged and the commission also found Crotty violated this ethical rule by collecting that fee. Because we find Crotty violated rule 32:1.5(a) by taking the fee without a hearing upon reasonable notice to the heirs or filing waivers of such a hearing under rule 7.2(3), we do not decide on this record whether the contingent fee was unreasonable in amount. Because we have already found another violation of rule 32:1.5(a), any determination of unreasonableness of the amount of the fee would not affect the sanction we impose in this case.

violated this rule. We will find a violation of this rule if a lawyer's conduct "impedes 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 267 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102–03 (Iowa 2012)). Crotty took attorney fees in the estate without notice to the heirs and before they were authorized under the applicable court rules. Court proceedings were consequently instituted in the estate to litigate the appropriate amount of attorney fees owed by the estate to Crotty. Accordingly, we conclude he violated rule 32:8.4(d).

2. *The forgeries.* As we noted above, the Board alleged Crotty's actions concerning his client's forgeries violated Iowa Rules of Professional Conduct 32:1.2(d), 32:1.4(a)(5), 32:3.3(a)(3), and 32:8.4(c). The commission found Crotty violated each of these rules except rule 32:1.4(a)(5). We conclude Crotty's actions concerning his client's forgery do not amount to a disciplinary violation.

The Board first alleged Crotty violated rule 32:1.2(d) in failing to disclose to the court that the renunciations filed with the court were forged. This rule provides,

> A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.

Iowa R. Prof'l Conduct 32:1.2(d). Although the commission did not find that Crotty knew the signatures of Richard Jr. and Ronald were forged when he filed the renunciations with the court, it nonetheless found Crotty violated the rule when he failed to reveal to the court Leonard's

forgeries in the application for appointment of a successor administrator, in the final report, or in a separate application requesting Leonard be held in contempt. In particular, the commission found Crotty's vague written characterization of the reason for appointing a successor administrator misled the court and aided Leonard's perpetration of a fraud. We respectfully disagree. We conclude the Board failed to prove Crotty either counseled Leonard to forge the signatures of his brothers or knowingly assisted him in perpetrating a fraud on the court. We credit Crotty's testimony that he was unaware of the forgeries when he filed the renunciations with the court. We also are convinced that Crotty verbally revealed the forgeries to the court when he presented the application and order for appointment of a successor administrator. Although we believe it would have been a better practice to further disclose the forgeries in a motion to withdraw the renunciations filed in the probate proceeding, we find the Board failed to meet its burden to prove a violation of rule 32:1.2(d).

Second, the Board alleged Crotty violated rule 32:1.4(a)(5) by failing to consult with his client, Leonard, about any relevant limitation on his conduct when he knew Leonard expected assistance not permitted by the Iowa Rules of Professional Conduct or other law. Rule 32:1.4(a)(5) requires every lawyer in Iowa to communicate "any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Iowa Rules of Professional Conduct or other law." *Id.* r. 32:1.4(a)(5). The commission found no violation of this rule in the record and neither do we.

Third, the Board alleged Crotty violated rule 32:3.3(a)(3) because he did not act with candor toward the court after learning of the forgeries. This rule provides a lawyer "shall not knowingly . . . offer

evidence that [he or she] knows to be false." *Id.* r. 32:3.3(a)(3). As we have already noted, Crotty did not know the renunciations were forged when he filed them with the court. But this does not end our analysis of the Board's claim under this rule, for the rule also requires Crotty to "take reasonable remedial measures, including, if necessary, disclosure to the tribunal" when he came to know of the forgeries.[11] *Id.* Comment 10 to rule 32:3.3 informs our understanding of Crotty's obligation under the rule:

> If withdrawal from the representation is not permitted or will not undo the effect of the false evidence, the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal information that otherwise would be protected by rule 32:1.6. It is for the tribunal then to determine what should be done—making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing.

*Id.* r. 32:3.3(a)(3), cmt 10. Although, as we have already noted, it would have been better if Crotty had disclosed the forgeries in a writing filed with the court or specifically sought direction from the court as to any additional measures he should take under the circumstances, we cannot say on this record that his verbal disclosure of the forgeries to the court was an unreasonable measure under the circumstances presented here. Accordingly, we find no violation of rule 32:3.3(a)(3).

---

[11]We assume without deciding that the renunciations filed with the court constituted an offer of "evidence" under rule 32:3.3(a)(3). Although the renunciations were not testimony or exhibits presented in a hearing or trial, they did make representations to the court about material facts in an estate proceeding and were arguably relevant to Crotty's duty of candor. *See Lipman v. Dickinson*, 174 F.3d 1363, 1371–72 (Fed. Cir. 1999) (finding attorney violated duty of candor in an administrative appeal before the Commissioner of Patents and Trademarks by continuing to propound affidavits after the affiants notified the attorney that the affidavits were inaccurate and should not be used for any purpose); *In re Scahill*, 767 N.E.2d 976, 980–81 (Ind. 2002) (per curiam) (finding attorney who failed to update client's financial declaration and reveal an IRA no longer existed at the time of trial violated his duty of candor to court).

Finally, the Board alleged that Crotty violated rule 32:8.4(c) when he filed a final report but failed to mention the renunciations in the court file bore signatures forged by the former administrator. Rule 32:8.4(c) provides that lawyers may not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* r. 32:8.4(c). The commission found a violation; however, we are not convinced. A lawyer violating this rule must act with some level of scienter. Thus, proof of a misrepresentation arising from mere negligence will not support a finding of a violation of this rule. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti,* 797 N.W.2d 591, 605 (Iowa 2011). In this case, Crotty disclosed the forgeries to a district court judge more than four months before he filed a final report. Although he could have taken more aggressive remedial measures, we find Crotty's failure to do so was not motivated by a purpose to deceive or defraud the court or the decedent's heirs, nor was it the result of an intentional misrepresentation. Crotty explained that he chose to disclose the forgeries in a conversation with the court rather than in a motion or application because he was fearful of Leonard's reaction. While this explanation might support a finding that Crotty was lacking in courage to face a client's wrath if the forgery were revealed to the court in writing, we are not persuaded that the Board proved Crotty's conduct in this context was of a type prohibited under rule 32:8.4(c).

**B. The Freeman Worker's Compensation Matter.** The Board also alleged that Crotty violated several court rules during the fifteen days following the suspension of his law license on December 5, 2014. In particular, he failed to take several actions required of Iowa lawyers who are suspended under chapter 41 of this court's rules for failing to satisfy continuing legal education requirements. *See* Iowa Ct. R. 41.5(2)(a) (notice to clients in all pending matters to seek legal advice

elsewhere); *id.* r. 41.5(2)(b) (deliver to all clients in pending matters any papers or other property to which they are entitled or notify them of suitable time and place where papers and other property may be obtained); *id.* r. 41.5(2)(d) (notify opposing counsel in pending litigation of the suspension). Crotty concedes that he failed to comply with these requirements and that he also violated rule 41.5(2)(g) by failing to file with the Board within thirty days of his suspension proof of his performance of the requirements under rule 41.5(2)(a)–(f). *See id.* r. 41.5(2)(g).

We conclude the Board met its burden to prove Crotty violated several ethical rules when he performed legal services in the Freeman case during the week following his suspension. In particular, Crotty admitted that he continued to perform legal services in the appeal of Freeman's worker's compensation case for several days after his suspension commenced and that he did not withdraw. In doing so, he violated rule 32:1.16(a)(1) (requiring withdrawal if the representation will result in a violation of the Iowa Rules of Professional Conduct or other law) and rule 32:5.5(a) (prohibiting practice of law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction). *See id.* r. 32:1.16(a)(1); *id.* r. 32:5.5(a).

### V. Sanction.

We next consider what sanction is appropriate for an attorney who violated our rules restricting the charging and collecting of attorney fees in probate matters and who violated rules governing the conduct of an attorney whose license is suspended. When choosing the appropriate sanction for an attorney's violation of ethical rules,

> we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold

public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008) (per curiam)).  We seek to "achieve consistency with prior cases when determining the proper sanction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010).

Crotty is not the first Iowa lawyer to violate our rules controlling the charging and collecting of attorney fees in probate matters.  "In prior cases, the resulting discipline has ranged from a reprimand to a suspension of various degrees."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carty*, 738 N.W.2d 622, 624 (Iowa 2007).  In a recent survey of our cases involving sanctions for violations of the rules and statutes governing attorney fees in probate matters, we observed that "if an attorney violates probate rules by taking an early fee to which she is otherwise entitled, later obtains a court order authorizing the fee, and causes no other harm to the client, we may issue a public reprimand." *Arzberger*, 887 N.W.2d at 368.  If, however, the attorney "charges an excessive fee or engages in misrepresentation, we may suspend the attorney." *Id.*

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Evans*, the Board filed a complaint alleging an experienced probate attorney took attorney fees in two probate matters before they were authorized under the applicable law and charged an excessive attorney fee in one of those matters.  537 N.W.2d 783, 784 (Iowa 1995).  We suspended the attorney's license with no possibility of reinstatement for thirty days.  *Id.* at 786.

In *Arzberger*, we found an attorney charged and collected an extraordinary fee in a probate proceeding without making application for or receiving court approval. 887 N.W.2d at 366–67. Although we found the attorney made misrepresentations to her client and the commission, we found her commendable record of volunteer community service and efforts to institute better office procedures to reduce the risk of similar future errors were mitigating factors, and we imposed a suspension of thirty days. *Id.* at 367–69.

In *Carty*, an experienced probate attorney charged and received a fee in excess of $19,000 for ordinary services to an estate. 738 N.W.2d at 623. He later discovered the estate's assets were overvalued by nearly $90,000 and that his fee had therefore been incorrectly calculated. *Id.* Although he amended the probate inventory to reflect the correct asset valuation, he did not take steps to reduce the amount of his fee for ordinary services to the estate. *Id.* Instead, the attorney sought and received extraordinary fees for services that duplicated some of the work performed as ordinary services in the estate proceeding. *Id.* We found the attorney's failure to take action to correct the obviously excessive fees for ordinary and extraordinary services as an aggravating factor and suspended his license for sixty days. *Id.* at 625.

In addition to Crotty's violation of rules governing probate fees, we must also consider his conduct in continuing—after his license was suspended—to practice law for several days in connection with Freeman's worker's compensation proceeding. In recent years we have been confronted with several disciplinary cases in which attorneys have been sanctioned for practicing while their licenses were suspended. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey*, 814 N.W.2d 250, 257–59 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v.*

*Hearity*, 812 N.W.2d 614, 618, 622 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 233, 236–37 (Iowa 2006). However, these cases are not particularly instructive in our determination of the appropriate sanction for Crotty because they presented a much broader and more egregious range of violations requiring a more severe sanction.[12] We find some aggravating factors in this record affecting our choice of the appropriate sanction. First, this is Crotty's second disciplinary action. A history of "prior disciplinary action is properly considered as an aggravating circumstance." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 188 (Iowa 2001). In 1980, Crotty was found in contempt and fined $500 for practicing law in Iowa while holding a certificate exempting him from continuing education requirements. Second, Crotty was an experienced lawyer on the verge of retirement at the time he committed the violations discussed above. We view his substantial experience in the practice of law as an aggravating factor. *Id.*

We find one mitigating factor in this case as well. Crotty forthrightly admitted that he performed legal services for Freeman after his license was suspended. We consider his recognition of some wrongdoing as a mitigating circumstance affecting our determination of

---

[12]In *McCuskey*, we imposed a one-year suspension for assorted misconduct including dishonesty, fraud, deceit or misrepresentation, trust account violations, and failure to respond to the board's complaint. 814 N.W.2d at 254–56, 259. Similarly, in *Hearity*, we suspended a lawyer's license for one year for assorted misconduct including neglect of an estate, neglect of multiple client matters, collecting unreasonable fees and practicing law after his license was suspended, and making false representations to the court. 812 N.W.2d at 618–21, 623. The misconduct of the attorney in *Hearity* was aggravated by a history of four prior admonitions. *Id.* at 622–23. In *D'Angelo*, we revoked the license of an attorney who misappropriated client funds in multiple cases, made misrepresentations to the court, neglected a client's family law matter, practiced while his license was suspended, and failed to cooperate with the board. 710 N.W.2d at 236–37.

the appropriate sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lane*, 642 N.W.2d 296, 302 (Iowa 2002).

After consideration of the record, relevant precedent, and aggravating and mitigating factors, we conclude a suspension of sixty days is appropriate. We conclude Crotty's misconduct in taking unauthorized fees in the Cleaver estate is similar to the conduct in *Evans* and *Arzberger* in which suspensions of thirty days were imposed. A slightly longer suspension of sixty days is warranted in this case, however. Crotty continued to perform legal services in the Freeman matter for several days after his license was suspended and this is the second time he engaged in the practice of law in Iowa when he was not authorized to do so. Additionally, we find troubling Crotty's use of an improper small-claims action to coerce a client into paying a fee that Crotty knew was not due and could only be obtained through the auspices of the probate court.

## VI. Conclusion.

We suspend Crotty's license to practice law in Iowa for a period of sixty days. The suspension imposed in this case applies to all facets of the practice of law as provided by Iowa Court Rule 34.23(3) and requires notification to clients, as provided by rule 34.24. As Crotty is already under suspension for failing to comply with the continuing legal education requirements for Iowa lawyers, prior to any reinstatement to practice law, he must establish that he has satisfied and brought current all continuing legal education obligations. The costs of this proceeding are assessed against Crotty pursuant to Iowa Court Rule 36.24.

**LICENSE SUSPENDED.**